IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>STANLEY HARRISON. | Criminal Case No. CCB-06-0478 |

## MEMORANDUM

Stanley Harrison is a federal prisoner currently serving the sixteenth year of his twenty-one-year sentence for a non-violent drug crime he committed in his early twenties. The court imposed this harsh sentence on Harrison because at the time of his sentencing he was subject to a career offender enhancement under the U.S. Sentencing Guidelines. That enhancement would not apply to Harrison were he sentenced today. Given the disparity between the sentence the court imposed and the sentence similarly situated criminal defendants now face—and in conjunction with the factors set forth in 18 U.S.C. § 3553(a), including, to use the Government's words, his "laudable" "post-offense accomplishments"—Harrison now asks this court for compassionate release. For the following reasons, the court will grant the motion and modify Harrison's sentence to time served.

## BACKGROUND

Harrison's conviction is the product of his role in a heroin distribution operation that he participated in for at least two months in the mid-2000's. The government arrested Harrison on October 27, 2006, charging him with one count of conspiracy to distribute heroin and six counts of distributing and possessing with intent to distribute heroin. Renewed Mot. for Sentencing Reduction ("Mot.") at Exs. 1, 3, ECF's 471-2, 4. Harrison ultimately pled guilty to conspiracy to distribute at least one kilogram of heroin in violation of 21 U.S.C. §§ 846 and 841 and the

1

government dismissed the remaining charges. *See* Mot. at Ex. 2, ECF 471-3; Judgment as to Stanley Harrison, ECF 166.

After accepting Harrison's plea agreement, the court sentenced him to 262 months imprisonment followed by five years of supervised release. Judgment as to Stanley Harrison at 2-3. The court based this sentence on the "findings in the presentence report." Tr. at 16:1-3, ECF 301. The report computed a total offense level of 34 from Harrison's base offense level of 32, career offender enhancement to 37, and 3-point downward adjustment for acceptance of responsibility. Mot. at Ex. 3 ¶¶ 11-21, ECF 472. The report then calculated a criminal history score of 15 due to Harrison's four prior possession with intent to distribute convictions and the timing of the latest offense. *Id.* ¶¶ 40-43. This placed Harrison in criminal history category VI. *Id.* ¶ 44. Harrison's total offense level of 34 and category VI criminal history produced a guideline sentencing range of 262 to 327 months and a minimum supervised release period of 5 years. *Id.* ¶¶ 69, 71. Considering this range, the court sentenced Harrison to 262 months, "the bottom of the guideline range[,] because the sentence is over 20 years as it is, [] a long sentence in any event." Tr. at 16:4-7. Harrison's "long sentence" was driven by his career offender status: absent the career offender enhancement, Harrison would have faced a guideline range of 130 to 162 months. *See* U.S.S.G. § 2D1.1(c)(5); U.S.S.G. § 5A. Instead, Harrison was subject to a range twice that length and received a sentence that more than doubled most of his codefendants. *See* Mot. at 9 accompanying citations.

Facing a sentence that would see him leaving incarceration in his forties having spent nearly half his life in prison, Harrison appears to have nonetheless devoted his period of incarceration to self-improvement. Harrison has completed numerous educational courses, including developing vocational skills to enhance his post-incarceration employment prospects.

*See* Mot. at Ex. 7, ECF 471-8. He has also maintained various jobs while carrying out his sentence, earning impressive reviews. *See* Reply in Support of Mot. at Ex. 1, ECF 476-1. His disciplinary record reflects a similar story of maturation, beginning with a series of minor infractions near the outset of his sentence but remaining relatively clean over the last decade. *See* Mot. at Ex. 9, ECF 471-10. These efforts have culminated in a variety of support for Harrison's return to the community and a standing offer of housing and employment. *See* Mot. at Exs. 10-13, ECF's 471-11, 12, 13, 14.

This background is relevant here because in December 2018, about halfway through Harrison's sentence, Congress enacted the First Step Act. *See* Pub. L. No. 115-291, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), often referred to as the "compassionate release" statute, which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, a court could review a prisoner's sentence under § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons ['BOP']." Pub. L. No. 115-391, 132 Stat 5194. But under the amended statute, a court may conduct such a review also "upon motion of the defendant" if the defendant has exhausted all administrative remedies to appeal BOP's failure to bring a motion, or once 30 days elapse following "the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582(c). The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" so-warrant. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Harrison now exercises his statutory right to request compassionate release as authorized by the First Step Act. On September 16, 2021, Harrison, through counsel, petitioned BOP to move for compassionate release on his behalf. Mot. at Ex. 5, ECF 471-6. After 30 days passed without

3

action from BOP, Harrison filed this motion, also through counsel, in December 2021. The parties agree that the motion is properly before the court.

## ANALYSIS

Harrison moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Under the compassionate release statute, a court may reduce a movant's sentence for "extraordinary and compelling reasons" if the reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The Fourth Circuit has confirmed that this language empowers courts "to consider *any* extraordinary and compelling reason for release that a defendant might raise," including the relative severity of the prisoner's sentence. *See United States v. McCoy*, 981 F.3d 271, 284-86 (4th Cir. 2020) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)). Thus, the court may grant compassionate release if (1) it determines the nature of Harrison's sentence creates an "extraordinary and compelling" circumstance, and (2) a sentence reduction is consistent with the § 3553(a) factors. As explained below, both elements favor a sentence reduction here, and the court will reduce Harrison's sentence to time served.[1]

**A. Extraordinary and Compelling Reasons Warranting Release**

A prisoner's sentence may present an extraordinary and compelling basis for relief if the prisoner would "likely receive a dramatically lower sentence than the one [they are] currently serving" were they sentenced today. *United States v. Elzey*, No. 09-cr-0288, 2022 WL 316717, at *2 (D. Md. Feb. 2, 2022) (quoting *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md. 2020), *aff'd sub nom. McCoy*, 981 F.3d 271)[2]; *see McCoy*, 981 F.3d at 286. That is true here.

---

[1] The Government takes issue with the Fourth Circuit's decision in *McCoy* but acknowledges that it nevertheless binds this court in this case. Opp. to Mot. at 6, ECF 475.
[2] Unpublished opinions are cited for the persuasiveness of their reasoning only, not for precedential value.

Harrison's sentence is grossly disproportionate to the sentence he would face today. When the court sentenced Harrison to 262 months for conspiracy to distribute heroin in 2008, it classified Harrison as a career offender. *See* Tr. at 10:9-12, 16:1-3; Mot. at Ex. 3 ¶¶ 19. As a result, it increased Harrison's total offense level from 29 to 34. Mot. at Ex. 3 ¶¶ 18-21. Taken together with Harrison's category VI criminal history, this produced a guideline range of 262 to 327 months. *Id.* ¶ 69. Without the career offender enhancement, Harrison would instead be subject to a guideline range of 130 to 162 months—half the length of the guideline he faced. *See* U.S.S.G. § 2D1.1(c)(5); U.S.S.G. § 5A.

Were Harrison sentenced today, however, he would not be subject to a career offender enhancement. The guidelines' career offender enhancement applies only where, among other things, "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." U.S.S.G. 4B1.1(a). Around 10 years after Harrison was sentenced, the Fourth Circuit held that conspiracy to distribute under § 846 is not a "controlled substance" offense for guidelines purposes. *United States v. Norman*, 935 F.3d 232, 239 (4th Cir. 2019). Given the decision in *Norman*, the parties agree that were Harrison sentenced today, he would no longer be subject to the career offender enhancement and thus his guideline sentence would be 130 to 162 months. *See* U.S.S.G. § 2D1.1(c)(5); U.S.S.G. § 5A; Mot. 12-13; Opp. to Mot. at 2, 12, ECF 475.

The disparity between Harrison's 262-month sentence and the 130-to-162-month guideline sentence he would now face creates an extraordinary and compelling ground for relief. Courts in the Fourth Circuit have consistently recognized that extraordinary circumstances may exist where application of a since-rescinded career offender enhancement drove a dramatic sentencing increase. *Elzey*, 2022 WL 316717, at *2 (collecting cases). And a career offender enhancement that increases the guideline sentencing range by "more than a decade" has a sufficiently dramatic

5


effect. *See id.* at *3. That is particularly true where, as here, the defunct enhancement produces a sentence "double the sentence [the prisoner] would receive today." *See id.* Thus, the disparity between Harrison's sentence and the sentence he would likely face were he sentenced today is extraordinary and compelling.

The court's conclusion that Harrison's circumstances are extraordinary and compelling must be the "product of [an] individualized assessment[] of" his circumstances. *McCoy*, 981 F.3d at 286. This starts—but does not end—with the gross disparity between Harrison's sentence and the sentence he would face today. On top of that disparity, the court considers that Harrison has already served a "substantial" portion of his sentence. *See id.* Harrison has been imprisoned for more than 190 months (over 16 years)—far longer than the 162-month top of guideline range he would face today. Harrison also committed the offense of conviction at age 24, and the prior convictions for which his sentence was enhanced began when he was just 17. Mot. at Ex. 3 ¶ 28. This "relative youth" at the time of conviction weighs further in his favor, *McCoy*, 981 F.3d at 286, as does his current age, 40, which reduces the likelihood that he will reoffend.[3] For each of these reasons, Harrison's individualized circumstances make this an extraordinary and compelling case.

All told, the court finds that the disparity between Harrison's sentence and the sentence he would face today, taken together with the additional individualized characteristics of his case, create an extraordinary and compelling circumstance that may warrant a reduced sentence. The court now turns to the § 3553(a) factors to determine whether they are compatible with this result.

---

[3] *The Effects of Aging on Recidivism Among Federal Offenders* 17 & Figs. 8-9, U.S. Sentencing Commission (2017), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.

**B. Section 3553(a) Factors**

Under the compassionate release statute, the court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" before reducing a defendant's sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court considers (1) Harrison's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a).

Starting with Harrison's personal characteristics, the court reiterates that Harrison was relatively young—in his early twenties—at the time of his offense. Indeed, Harrison was pushed into illicit activity at age 12 after his parents "abandoned" him, and in some ways had little "chance" to pursue another path. Tr. at 17:4-12. Harrison's performance since his incarceration, however, combined with his promising reentry plan, suggest that chance may now be available to him. Since becoming incarcerated, Harrison has completed a veritable course catalog of educational and vocational classes, developing marketable skills that will enhance his ability to reenter the workforce. *See* Mot. at Ex. 7. This is evidenced by the various jobs he has held while incarcerated, where he has earned top-notch reviews. *See* Reply in Support of Mot. at Ex. 1. His disciplinary record tells the same story: Harrison incurred a series of minor disciplinary infractions while still in his youth, but those have all but evaporated as he has matured over the course of his sentence. *See* Mot. at Ex. 9. And not only will Harrison return to the community equipped with the tools to succeed, he will also have the opportunity to do so—standing offers of housing and employment await him. *See* Mot. at Exs. 10, 13. Indeed, even the Government acknowledges the

7

first § 3553(a) factor favors Harrison, characterizing his "post-offense accomplishments, rehabilitation while in prison, and reentry plan" as "laudable." Opp. to Mot. at 11.[4]

Taking the second and third factors together supports Harrison as well. Factor two assesses the seriousness of the offense; factor three measures the derivative need for punishment. This was a "serious, albeit non-violent, drug offense[]." *See United States v. Eccleston*, 573 F. Supp. 3d 1013, 1019 (D. Md. 2021). The U.S. Sentencing Commission, under its congressional mandate, advises a correspondingly serious punishment. That punishment is a sentence of 130 to 162 months. *See* U.S.S.G. § 5A. Harrison has already served over 190 months—much longer than the Commission deems necessary to serve the purposes of punishment for his offense. *See* U.S.S.G. § 1A1. And the court is confident that such a sentence is not only more than just, but also more than sufficient to demonstrate the seriousness of the offense, provide general and specific deterrence, and promote public safety. Indeed, "the Government does not contend that Harrison would pose a danger to the community." Opp. to Mot. at 1, 8; *see id.* at 11. Instead, its central factor three argument is the importance of "the finality of sentencing." *Id.* at 12. The Fourth Circuit, however, has already addressed this point, explaining that "while the finality of sentences is an important principle, § 3582(c)(1)(A) 'represents Congress's judgment that the generic interest in finality must give way in certain individual cases.'" *McCoy*, 981 F.3d at 288. The combination of factors two and three suggest this is one such case.

As for the final three factors, the court's analysis to this point dictates the result. On factor four, Harrison's need for rehabilitation, the court has already explained, and the Government

---

[4] In addition, the court appreciates Harrison's continued willingness to claim full responsibility for his actions, and his "choice" to from here on out "do better." Mot. at Ex. 8, ECF 471-9. The court also considers the community support Harrison enjoys for his return provided by Ms. Harrison, Ms. Mitchell, and Ms. Cooper. *See* Mot. at Exs. 10-12.

seems to agree, that the trajectory of Harrison's educational, vocational, and disciplinary record show this need has been amply satisfied. Factor five, the guideline sentence, takes us back to the beginning: Harrison has served over 190 months despite a current guideline range of 130 to 162 months. *See* U.S.S.G. § 5A. Finally, factor six addresses the need to avoid unwarranted sentencing disparities. Harrison's sentence is longer—by over three times—than the current average federal drug trafficking sentence. *Statistical Information Packet, Fiscal Year 2021, Fourth Circuit* 11, U.S. Sentencing Commission (2022), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/4c21.pdf. In fact, it is longer even than the current average federal sentence for murder. *Id.* And it is far longer than the sentences of most of his codefendants, regardless of relative culpability, all but one of whom have already been released. *See* Mot. at 9 accompanying citations; Reply in Support of Mot. at 9 n.1. The final three § 3553(a) factors are therefore consistent with a sentence reduction.

In sum, the court concludes that all six factors set forth in § 3553(a) favor reducing Harrison's sentence.

## CONCLUSION

For the reasons discussed above, the court concludes the severity of Harrison's sentence presents an extraordinary and compelling circumstance justifying a reduced sentence and that the § 3553(a) factors also favor such a reduction. The renewed motion for compassionate release, ECF 471, will therefore be granted, and the initial motion, ECF 415, will be denied as moot. As Harrison has already served a sentence exceeding the high end of the guideline range for his offense, and because it is consistent with the factors in § 3553(a), the court will reduce Harrison's

sentence to time served plus seven days. All other relevant terms of his original sentence, including his 5 years of supervised release, will remain the same.

    A separate order follows.

___1/25/2023_____                        _____/s/_____
Date                                                   Catherine C. Blake
                                                       United States District Judge